## Case No. 16,374.

### UNITED STATES v. STALY et al.

[1 Woodb. & M. 338.] [1]

Circuit Court, D. Rhode Island. June Term, 1846.

SEAMEN—SHIPPING ARTICLES—REFUSAL TO SERVE —REVOLT—UNSEAWORTHINESS OF VESSEL —AUTHORITY OF MASTER.

1. Shipping articles, signed by seamen, to a port A. and a market, are definite enough to be binding.

2. If the vessel has not cleared, but is lying at anchor in a navigable stream, where the tide ebbs and flows, the seamen on board are bound to obedience: and this court, probably, has jurisdiction over a revolt there, and will exercise it, if no evidence be offered as to the limits of the jurisdiction of the state, and any exception on this account is apparently waived. Whether the vessel be seaworthy or not, is a fact to be settled by the jury. But if she was not in truth seaworthy, and the seamen, on going on board and examining her, objected to serving on that account, it must be considered a refusal to enter upon the discharge of their contract, and not a violation of duty after their service has commenced under it.

3. In such case the remedy against them, if any, is a civil one for not beginning to serve under the articles, and not a criminal one for breaches of duty, after having entered upon duty.

4. If subsequent to the shipment and commencement of service, the vessel is believed not to be seaworthy, the seamen cannot refuse obedience, but may ask a survey if in port, and if not, but within sight of land, request the master to return and have the survey.

[Cited in U. S. v. Nye, Case No. 15,906.]

5. Should he then conduct himself unreasonably, or in any way treat them with unnecessary severity, their remedy is at law after their return, and not a resort to violence, unless in danger of the actual loss of life, and then at their peril as the result may turn out.

This was an indictment in several counts, [against Ephraim Staly and others,] for a revolt on board the barque John Brown, in Providence river, on the 23d of May, 1846.

[2] [From 1 Kan. 606.]
[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

The respondents pleaded not guilty. It appeared in evidence, that the defendants and four others shipped on a voyage to Apalachicola, or elsewhere, for a market, and were taken on board the barque the evening previous to the transaction complained of. The vessel lay at anchor in the stream, and in the morning, on unfurling the sails, the mainsail was asserted by the men to be in such a dilapidated condition, and some of the rigging so much out of order, that they objected to going to sea in the vessel, as not seaworthy, and made offers to rescind their contract, and pay back the advance which they had received in money. The officers denied that she was unseaworthy, and undertook to enforce duties under the contract, which led to the collision and resistance complained of. Some objections were made to the form of the contract, and it was further insisted in their behalf, if the vessel was in fact not in a suitable condition for the voyage contemplated, the men were not bound to serve in her at all.

W. Burgess, U. S. Dist. Atty.
Mr. Rivers, for defendants.

WOODBURY, Circuit Justice, charged the jury, that the contract, though in form to a port designated, or elsewhere for a market, was definite enough and binding. If as certain as a policy of insurance, which was sometimes in such a form, it was as certain as was necessary in respect to the service, wages and obedience of seamen. The vessel had not yet cleared, and it is objected, that evidence of her clearance should be adduced from the collector's office, before the indictment can be sustained. But it strikes me, that being in a navigable stream, where the tide ebbs and flows, and nothing proved or shown as to the jurisdiction of the state over the place where she was at anchor, the indictment can be sustained, under the act of congress, as to offences of this kind in vessels, whether she had cleared or not. But I give only my first impressions, and shall see, if necessary hereafter, that the defendants have the benefit of any exceptions to this ruling, if erroneous. If obedience can be required in a vessel on the high seas, at a distance from the river, it should be in the river, or at anchor and before the clearance is obtained as well as after, or all order will be frustrated, and the due navigation and safety of the vessel rendered impossible. U. S. v. Hamilton [Case No. 15,291]; U. S. v. Stevens [Id. 16,394]. If there be any thing in the objection, it applies to the jurisdiction of this court to try the offence, when committed within the stream and port, and not on the high seas, rather than to the offence itself not having being committed at all. Under the act of congress of 1835 [4 Stat. 775], if the place where a revolt happened was clearly within the jurisdiction of a state, it might be doubtful whether this act reaches it, though that of A. D. 1790 [1 Stat. 112] has been con-

strued to do it, some different terms being used there. Undoubtedly congress can, if it pleases, punish such offence in vessels, under its power to regulate commerce, though in places not on the high seas, or not within mere admiralty jurisdiction. But as the facts here are not sufficiently full to raise the question under the present act of congress, I shall, for the present, give no opinion on it, but consider it for the present waived, and the power to try this offence conceded to this court. See U. S. v. New Bedford Bridge [Case No. 15,867].

In respect to the question of the vessel being seaworthy or not, that is one of fact, to be settled by the jury. But I give it to them in charge, that if the seamen, as soon as they could examine the vessel and her sails after coming on board, and decide on her seaworthiness, did so, and then reasonably objected to enter on their contract, they were not punishable as criminals for refusing merely to begin to serve at all under their contract. Because it was the duty of the owners to have the ship seaworthy, and if she was not, they could not legally exact the proceeding to a fulfilment of the shipping articles by the men. It would then become a mere controversy as to the obligation to begin their service, and not to complete it faithfully after begun, with full knowledge of the real condition of the vessel. It would be a case for civil redress for damages for not entering on the contract, if the vessel was seaworthy. On the contrary, if the seamen had enjoyed full opportunities to examine the condition of the vessel, and had then begun their service, under their contract, they were bound to go on and yield obedience to all lawful commands; and if they became satisfied afterwards, that the vessel was not seaworthy, they should ask a survey, if in port, and if out of it, but not out of sight of land, should ask the mates to unite with them in obtaining it, under the provisions of the act of congress. They would still be bound to obey orders, and would not be justified for conduct otherwise mutinous, unless perhaps in immediate peril of life, and so found as a fact by a jury, after the crew come on shore, and are arraigned for disobedience. The duty of the seamen, after they have once entered fully on their service under their contract, is obedience; that of the officers is protection, and lenity, and kindness, so far as consistent with the preservation of order, and the safety of property and life. Officers are presumed to have superior intelligence and skill, and must be held answerable for the use of them; and in case of unseaworthiness, their lives are at risk as much as those of the seamen, and in real doubt they are as likely to wish a survey. Seamen are presumed to have bodily vigor, a knowledge of duty, and a willingness to obey orders. Let both classes conform to these presumptions, and the law will equally protect both. But let wanton cruelty appear in the officers, or a reckless disregard of the rights of the seamen, and they are to be punished no less severely than the latter, when instead of patience and obedience, and a reliance on the laws of their country for redress, they take the sword of justice into their own hands, and act as executioners of their own wills, as well as judges and parties.

*The jury not agreeing, the respondents were discharged on their own recognizances.*